UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CLAUDE PIERCE**, | Civil Case No. 3:11-CV-01250-KI |
| Petitioner, | |
| v. | OPINION AND ORDER |
| **J.E. THOMAS**, | |
| Respondent. | |

    Anthony D. Bornstein
    Federal Public Defender's Office
    101 SW Main Street, Suite 1700
    Portland, Oregon  97204

       Attorney for Petitioner

S. Amanda Marshall
United States Attorney
District of Oregon
Ronald K. Silver
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902

    Attorneys for Respondent

KING, Judge:

Petitioner, an inmate at FCI Sheridan, brings this habeas corpus action pursuant to 28 U.S.C. § 2241. For the reasons that follow, I deny the Petition for Writ of Habeas Corpus.

## BACKGROUND

Petitioner is serving a sentence of 120 months for Possession With Intent to Distribute 50 Grams or More of Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(III); his projected release date is January 14, 2015.

Special Investigative Services (SIS) Technician G. Martin wrote Incident Report No. 2207762 on September 7, 2011, charging Petitioner with violations of Codes 297 (Use of the Telephone for Abuses), 299, most like 296 (Conduct which Disrupts, Most Like Use of the Mail for Abuses), and 331A (Planning the Introduction of Non-hazardous Contraband). Lieutenant Rodrigues was the lieutenant who investigated the events contained in the Incident Report.

On September 7, Lieutenant Rodrigues delivered a copy of the Incident Report to Petitioner. SIS Technician Martin amended the incident report on September 8. Lieutenant Rodrigues delivered it to Petitioner on the same day and read Petitioner his rights; Petitioner said he understood his rights and declined to provide a statement.

Page 2 - OPINION AND ORDER

The Incident Report charged Petitioner, inmate Gary Nixon, and inmate Antoine Evans with conspiring to make plans to introduce contraband into FCI Sheridan. In a "plain language" memorandum, SIS Technician Martin explained:

- Inmates PIERCE and NIXON plan to have inmate PIERCE's girl Candace Davis buy contraband and mail it into inmate NIXON disguised as an incoming package from staff at FCI Victorville.

- Candace buys the items but does not want to go through with sending them in disguised as official government mail.

- Inmate NIXON tells her to mail the items to Antionette Johsnson [sic], friend of inmate EVANS.

- Inmate NIXON writes Antionette a letter telling her how to make the package look like it is coming from staff at FCI Victorville. Inmate NIXON wants her to purposely leave a half opened bottle of prayer oil in the package, presumably to help cover up the smell of the tobacco hidden in Ziploc bags concealed in boxes of crackers.

- Inmate NIXON attempts to prepare R&D staff by telling them he is expecting a package of property from FCI Victorville.

- Inmate EVANS girl is in phone contact with inmate PIERCE's girl about the package of contraband. Inmate EVANS tells Antionette to let Candace know the package is going to be mailed in.

Cortez Decl. Attach. 1, at 14.

On September 13, the Unit Disciplinary Committee convened. When asked about the investigation's findings, Petitioner responded, "I didn't have nothing to do with any of this." Id. at 9. The Committee found Petitioner guilty and referred the charges to a Discipline Hearing Officer ("DHO"). It identified the alleged violations as "Phone Abuse to Further a High Cat. Act/Abuse of Mail to Further High Cat. Act/ Introduction of Non-Hazardous Contraband/ Disruptive Conduct High." Id. at 38. It recommended loss of good time, time in the disciplinary

segregation unit, and loss of telephone privileges. The hearing was to be held on a date and time "[t]o be determined by DHO." Id. Petitioner initially requested a staff representative but, when he learned it would be SOS Cooley, he waived his right to a representative. He requested one witness, Lieutenant Rodrigues, believing the lieutenant could testify to Petitioner's "not being involved in the charges." Id.

On October 13, Petitioner signed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and filed it in this Court on October 17, along with a request for a temporary restraining order seeking to avoid the imposition of sanctions. The Court denied the motion, finding Petitioner had failed to exhaust his administrative remedies as a hearing was yet to be held, failed to show that such a hearing would be futile, and failed to demonstrate a likelihood of success on the merits.

On October 18, DHO Daniel Cortez conducted a disciplinary hearing. He noted Petitioner had not obtained staff representation and asked Petitioner if the hearing should be delayed to obtain representation. Petitioner declined. During the hearing, Petitioner stated,

> I was not involved. I don't really know Evans. My girlfriend works at Addidas [sic] so I hooked him up with her to try to get him a deal on some shoes. My girl was going to come up to visit and she doesn't like to drive so I hooked him up with her aunt and was trying to hook him up with another girl. I am not sure what the conversation was about when I asked her if she had everything and she said it didn't look right. We always argue with each other. Nixon was calling Candace to set up someone to come see him when she came to see me. I don't know anything about Nixon trying to have a box sent in here. She was talking about getting perfume for herself. She was under the impression that I am coming home soon because of the crack retroactivity. She has been gathering stuff for me to go home. I haven't told her it might not apply to me because of mandatory minimums.

Id. at 1-2.

Page 4 - OPINION AND ORDER

In a report issued November 4, DHO Cortez considered Petitioner's statement, the Incident Report and Investigation, a copy of a letter placed in outgoing mail by Nixon, a statement given by Nixon, recorded calls, inmate contact forms, emails to and from Pierce and Evans, and memoranda from SIS Technician Martin and Correctional Systems Officer J. Brannan.  Although Petitioner had requested Lieutenant Rodrigues testify as a witness, DHO Cortez declined that request; Lieutenant Rodrigues was the investigator and he summarized in his report the events and his knowledge of Petitioner's involvement in those events.  The DHO found Petitioner had committed the prohibited acts of Use of the Telephone for Abuses Other Than Criminal Activity (297), Conduct Which Disrupts Most Like: Use of the Mail for Abuses Other than Criminal Activity (299, 296), and Introduction of Non-Hazardous Contraband (Planning) (331A).

As sanctions for the violations, the DHO imposed the following punishment:  disallowed 27 days of good conduct time, 30 days of disciplinary segregation, and one year loss of telephone privileges  for the Code 297 violation; disallowed an additional 14 days of good time conduct, 30 days of disciplinary segregation, and one year loss of email privileges for the Code 299, most like 296, violation; and disallowed 13 days of good time conduct, 30 days disciplinary segregation (suspended pending 180 days of clear conduct), and 90 days loss of commissary privileges for the Code 331A violation.

On October 22, Petitioner signed an Amended Petition for Writ of Habeas Corpus, which was filed on October 25, and a second motion for temporary restraining order in an attempt to stop the punishment from taking effect.  On November 2, the Court denied the motion for a temporary restraining order citing the reasons set forth in the earlier Order.

Page 5 - OPINION AND ORDER

A copy of the DHO's report was delivered to Petitioner, via inmate mail, on November 4.

Petitioner alleges in the Amended Petition that his due process rights were violated in the course of the disciplinary proceeding, as were his First Amendment rights.  Respondent argues Petitioner is not entitled to relief because he failed to exhaust his administrative remedies and because, in any event, he was provided all the process due under the circumstances. Contemporaneously with his reply in support of his Amended Petition, Petitioner filed a Supplemental Claim alleging a violation of his Eighth Amendment rights, arguing that depriving him of telephone privileges for a full year is not commensurate with the charged conduct.

## DISCUSSION

I.    Exhaustion of Remedies

It is well settled that federal prisoners generally must exhaust their federal administrative remedies prior to filing a habeas corpus petition under 28 U.S.C. § 2241.  Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam).  Although the exhaustion requirement is not jurisdictional, this court may dismiss a habeas petition for failure to exhaust administrative remedies.  Id.  Exhaustion of administrative remedies allows for development of the record, and gives the administrative agency an opportunity to correct its own errors or provide the relief requested.  Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983) (per curiam).

Exhaustion may be excused if the administrative remedies are inadequate, futile, or where pursuit of the administrative remedies would cause irreparable injury.  Laing v. Ashcroft, 370 F.3d 994, 1000–01 (9th Cir. 2004); United Farm Workers of Am., AFL–CIO v. Arizona Agric. Emp't. Relations Bd., 669 F.2d 1249, 1253 (9th Cir. 1982).

It is undisputed that Petitioner had not exhausted his available administrative remedies at the time he filed his Petition in this Court on October 17, 2011. He asserts in his Amended Petition, signed only four days after his hearing, that he requested the appropriate Administrative Remedy Appeal forms but that staff "refused these forms time and time again, including most recently in the Special Housing Unit[.]" First Am. Pet. 2. Notably, a copy of the DHO's report was not even delivered to Petitioner until November 4, after he filed this Amended Petition.

While I am concerned Petitioner did not diligently pursue his administrative remedies, it is obvious that requiring exhaustion at this juncture would be futile. I excuse the exhaustion requirement in the circumstances of this case in order to reach the merits which, as I set out in detail below, results in denial of the Petition. Accordingly, exhaustion is excused in the circumstances of this case.

II.     Procedural Due Process

Petitioner asserts he requested the appointment of a staff representative and, when one did not show up for the hearing, the DHO denied his postponement request. He challenges the notice provided to him by the Unit Disciplinary Committee, which indicated that a hearing with a DHO would be set "[a]t DHO Convenience." Cortez Decl. Attach. 1, at 38. He argues he did not obtain a written decision within a reasonable time. He suggests he had inadequate notice of the charges because the charging instrument identifies four counts, but he was only found guilty of three. Finally, in his counseled Reply to the government's response, he asserts that he was not permitted to call the single witness he asked to call–Lieutenant Rodrigues.

It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply."

Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In Wolff, the Supreme Court set forth the

following minimum procedural due process rights to be afforded to a prisoner accused of

misconduct in prison which may result in the loss of good time credit: (1) the right to appear

before an impartial decision-making body; (2) 24-hour advance written notice of the disciplinary

charges; (3) an opportunity to call witnesses and present documentary evidence in his defense

when it is consistent with institutional safety and correctional goals; (4) assistance from a staff

representative; and (5) a written decision by the fact finder of the evidence relied upon and the

rationale behind the disciplinary action.  Id. at 563–67.

      As an initial matter, the evidence is overwhelming that Petitioner waived his right to a

staff representative and there is no evidence he asked to postpone the hearing.  Additionally, he

was provided notice of the *charges* well over 24 hours in advance of the hearing, and that is all

that is required by Wolff and the due process clause.  He received a written decision within 17

days of the hearing; I could not say this was unreasonable or in violation of due process in the

circumstances of this case.  As for the challenge to the charging instrument, Petitioner was

warned of all possible charges and provided with the facts supporting the charges; he does not

argue or demonstrate how he was prejudiced by the DHO's formation of the charges as three

violations from the four identified by the Unit Disciplinary Committee.

      As for Petitioner's assertion that he was not permitted to call the single witness he asked

for, he does not explain what Lieutenant Rodrigues could have added to the hearing.  The

government explains the "DHO declined to call this witness, as the Lieutenant's knowledge of

the events were [sic] adequately summarized in his written statement."  Resp. 14.  It is

well-established that where prison officials do not allow witnesses to testify at a hearing, they

Page 8 - OPINION AND ORDER

must justify such a decision on a case-by-case basis. Ponte v. Real, 471 U.S. 491, 497 (1985). Nevertheless, the Supreme Court has concluded that due process does not require a prison to allow an inmate to confront and cross-examine witnesses. Baxter v. Palmigiano, 425 U.S. 308, 322-23 (1976); Wolff, 418 U.S. at 569. The DHO's decision was in accordance with BOP policy, which provides that the DHO, in his discretion, may decline to allow the participation of a witness if it would jeopardize institution security or if the witness "would present repetitive evidence." 28 CFR § 541.8 (f)(3) (eff. June 20, 2011); see also Dep't. of Justice, BOP, Program Statement 5270.09: Inmate Discipline Program 31 (eff. Aug. 1, 2011), available at www.bop.gov/policy/progstat/5270_009.pdf. The DHO adequately explained his reasons for not calling Lieutenant Rodrigues–which permissibly were for reasons other than security issues– and Petitioner fails to identify any evidence that the DHO's decision prejudiced him. See Bostic v. Carlson, 884 F.2d 1267, 1271 (9th Cir. 1989) (multiple inmates can be precluded from testifying repetitively and cumulatively where "witnesses would not provide any pertinent new information"); Ward v. Johnson, 690 F.2d 1098, 1112-13 (4th Cir. 1982) (DHO may disallow witness for irrelevance or cumulativeness); Chesson v. Jaquez, 986 F.2d 363, 366 (10th Cir. 1993) (officer's testimony properly disallowed where plaintiff failed to show how the testimony would have supported his argument).

Petitioner fails to prove a due process violation.

III.     Substantive Due Process

Petitioner challenges the charges. He suggests SIS Technician Martin wrote the Incident Report in retaliation, although Petitioner does not say why. He also argues that because no box or package arrived containing contraband, the conspiracy allegation holds no water. Finally, he

asserts the Use of the Telephone (297) charge cannot be sustained because it was not in furtherance of a "high category act." First Am. Pet. 8.

Substantive due process is satisfied in a prison disciplinary procedure if there is "some evidence" to show the inmate committed the offense in question. Superintendent v. Hill, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence." Id. at 455–56. Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id.

Here, the evidence reflects that Petitioner received an email from "Mia Pierce" containing the statement, "The main ingredients I both the big 4 pack ones not the individual packs. I hope the dish comes out right." Cortez Decl. Attach. 1, at 5. Petitioner responded with: "u might want to check at midkay's or the swap meat for the smell good if you can't find it forget it and put some of yours." Id.

Petitioner then repeatedly called Candace Davis, a person identified on his contact list as Petitioner's spouse, and engaged in the following conversations:

> On August 15, 2011, inmate Pierce contacted (971) 533 [redacted] (Candace Davis-Spouse). The person called states, "I've only been able to find one pair of shoes. I can't find the perfume you wanted. Inmate Pierce replies, "O.K. just get the one pair then. Will you be able to take care of it tomorrow?" The person replied, "I'll try."
>
> On August 16, 2011, inmate Pierce contacted (971) 533 [redacted]. Inmate Pierce stated, "I don't know what the problem is. Did you get everything you were supposed to?" The person called replies, "Yes." Pierce asks: "What is the problem?" The person replies "It didn't look right." Inmate Pierce states: "Well, just hold on to it."

>On August 17, 2011, inmate Pierce contacted (971) 533 [redacted]. Inmate Pierce stated: "I'm gonna give you the Lawyer's address and you could put the motion in there. You could send it to them. You send it to my cuddy people." The person called replies, "What people?" Inmate Pierce states: "My cuddy. I'm gonna give you an address and you can put all my stuff in there and send it to somebody else." The person called replies, "Who?" Pierce states, "Listen, another fucking state. Don't get to questioning me."

Cortez Decl. Att. 1, at 5 (some punctuation corrected for readability).

At this point, Petitioner ran out of phone credits. On August 18, inmate Nixon called Candace Davis, saying, "I'm gonna give you an address. [D]id you get everything together? You still got everything?" The person called replied, "Yes." Nixon then told her to send "it" to Antionette Johnson "ASAP." Id. The next day, Nixon called Candace Davis and asked her if she had "a chance to do that?" She said, "Yes." Id.

That day, Nixon attempted to mail a letter marked for his lawyer, but addressed to Antionette Johnson, detailing how the contents of the box should look. For example, "now you have 5 box's of crackers[;] those boxs should not look like they been open." Id. at 17. He instructed her to place the contents in "glady seal bags" to ensure "there is no smell" and crazy glue the boxes closed. He instructed her to use a 16x19 box, send the package via UPS ground, put Nixon's name on the outside of the box and use FCI Victorville's address as the return address. He suggested she put a half-open bottle of prayer oil in the box "so the box smell." Id. at 18. This letter was never sent; the unit officer believed Nixon was acting suspiciously, confirmed that the addressee was listed as a friend of Nixon's on his contact list, and that the address did not belong to an attorney. Believing the letter was not legal mail, the officer opened it and turned it over to the SIS office.

Page 11 - OPINION AND ORDER

In the meantime, inmate Evans began emailing Antionette Johnson, a person identified as a friend on his contact list, discussing a "gift that was coming" her way. Id. at 5. She reported receiving the a "big azz box" on August 23 and asked what to do with it. Evans instructed her to hold onto it.

On August 23, Nixon went to the Receiving and Discharge Unit asking if he had received his property from FCI Victorville yet, indicating that he had spoken with his counselor about the property and that it was being sent.

On August 29, Antionette Johnson emailed Evans saying she had received a couple of phone calls yesterday and was told to "read the book." Id. at 6. Evans apologized for "in and out communication" and said he was going to "have my other patna call you and run the script[.]" Id.

On September 5, Petitioner called Candace Davis, saying, "What's up with the cousin out of town? Did she ever get them books and send them to me?" Candace Davis replied, "No, I haven't even heard from her." Id. at 5. In the meantime, Evans emailed Antionette Johnson that, "[T]he window of opportunity is closing on that box of instructions you got . . . at first I wanted to wait till I saw you–but then my patna was to call you and tell you my thoughts . . . don't know if he ever called cause you never mentioned ms. pee getting a call." Id. at 6. The next day, Evans gave Antionette Johnson the phone number for Candace Davis.

On September 6, more than two weeks after his last contact with her, Nixon called and informed Candace Davis, "Let her know as soon as she take care of that I'm gonna send you $500 so you can send it to her" and "I need you on her. I need that ASAP." Id. at 5.

This evidence is "some evidence" supporting the DHO's conclusion that Petitioner was "part of a conspiracy, using the inmate phone and e-mail systems, in order to have outside contacts collect items and send them in under guise of property being sent to this institution from another Bureau of Prisons facility." Id. at 7.  The evidence is sufficient to sustain the finding that Petitioner committed the prohibited acts of Use of the Telephone for Abuses Other Than Criminal Activity, Conduct Which Disrupts, Most Like Use of the Mail for Abuses Other Than Criminal Activity, and Introduction of Non-Hazardous Contraband (Planning).  Finally, the high category prohibited act supporting the Use of the Telephone charges is supported by the code 296 act–directing others to send mail through unauthorized means.

The petition is denied with respect to the claim that there was insufficient evidence to support the DHO's decision.

IV.    First Amendment

Petitioner asserts the disciplinary action violates his First Amendment rights because they were based upon the content of his telephone conversations.  A prisoner's First Amendment rights are limited by the Bureau of Prisons' "legitimate penological interests." Turner v. Safley. 482 U.S. 78, 89 (1987).  "Although prisoners have a First Amendment right to telephone access, this right is subject to reasonable limitations arising from the legitimate penological and administrative interests of the prison system." Johnson v. State of Cal., 207 F.3d 650, 656 (9th Cir. 2000) (per curiam), overruled on other grounds by Johnson v. California, 543 U.S. 499 (2005).  In this case, the Bureau of Prisons has a legitimate penological interest in preventing inmates from introducing contraband into the prison. See Overton v. Bazzetta, 539 U.S. 126, 133 (2003) ("internal security [is] perhaps the most legitimate of penological goals").

Page 13 - OPINION AND ORDER

Respondent's actions did not violate Petitioner's First Amendment rights.

V.   Eighth Amendment

Petitioner argues banning him from using the telephone for one year violates the Eighth Amendment because he has been prevented from communicating with his immediate family. Petitioner disputes that the sanction is at all related to a legitimate governmental interest, suggesting telephone contact with family is a rehabilitative mechanism.

Depriving a prisoner of phone calls for a year does not violate the Eighth Amendment. See Overton, 539 U.S. at 136–37 (two-year ban on visits to inmates who had committed two or more substance-abuse violations does not violate the Eighth Amendment); Toussant v. McCarthy, 597 F. Supp. 1388, 1413 (N.D. Cal. 1984) ("Plaintiffs cite to no authority for the assertion that the complete denial to inmate of access to telephone violates contemporary standards of decency inherent in the Eighth Amendment"), aff'd in part, rev'd and remanded in part, 801 F.2d 1080 (9th Cir. 1986); Williams v. ICC Committee, 812 F. Supp. 1029, 1034 (N.D. Cal. 1992) (same). Additionally, the DHO had a basis for depriving Petitioner of telephone privileges since his part in the conspiracy involved talking on the phone with his wife to persuade her to participate in mailing contraband to the prison. As the DHO explained,

> The use of a telephone while incarcerated is a privilege, not a right. Using the Inmate Telephone System to contact an outside source to coordinate the introduction of contraband is prohibited and will not be tolerated. The sanctions . . . are imposed to stress upon inmate Pierce that Abuse of the Telephone For Other Than Criminal Activity will result in punishment.

Cortez Decl. Attach. 1, at 8.

I have also considered, and rejected, the possibility that the telephone restriction is a punishment so disproportionate to Pierce's prison infraction that it violates the proportionality

Page 14 - OPINION AND ORDER

principle imposed by the Eighth Amendment. See Ewing v. California, 538 U.S. 11, 23 (2003) (Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime").

The punishment imposed by Respondent is not sufficiently harmful to constitute a constitutional violation.

## CONCLUSION

Based on the foregoing, the Petition for Writ of Habeas Corpus [1], the Amended Petition for Writ of Habeas Corpus [9], and the Supplemental Claim in Support of First Amended Petition for Writ of Habeas Corpus [34] are denied and the proceeding is dismissed with prejudice.

IT IS SO ORDERED.

Dated this       23rd       day of October, 2012.

                                      /s/ Garr M. King
                                      Garr M. King
                                      United States District Judge